UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA J. DEDEN, | ) NO. CV 12-7080-MAN |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff filed a Complaint on August 21, 2012, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for a period of disability ("POD"), disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On November 15, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on May 3, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 10, 2009, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 11, 136-38.) On July 29, 2009, plaintiff filed an application for a POD and DIB. (A.R. 11, 139-42.) In both applications, plaintiff alleged an inability to work since July 29, 2005, due to "[p]revious history of seizures caused by a brain tumor," "[h]ematoma [and] confusion when I had surgery," "[c]hronic depression," "[m]issing disc in lower back," and "[l]eaking pad in upper back." (A.R. 144.) At the reconsideration level, plaintiff additionally alleged "[d]epression is worsening, high blood pressure is not going down despite weight loss, edema is not going down and is present upon waking in a.m.," as well as an "enlarged heart" and "sleep apnea." (A.R. 158, 167.)

The Commissioner denied plaintiff's claim initially (A.R. 69-74) and upon reconsideration (A.R. 76-81). On February 9, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Eric Benham (the "ALJ"). (A.R. 11, 24-59.) Vocational expert Aida Worthington also testified. (*Id.*) On March 18, 2011, the ALJ denied plaintiff's claim (A.R. 11-18), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-7). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2009, and that she has not engaged in substantial gainful activity since the alleged onset date of July 29, 2005. (A.R. 13.) The ALJ determined that plaintiff has the severe impairments of "obesity, congestive heart failure, back and knee pain," but she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). (A.R. 13-14.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except occasional postural activities [and] occasional handling and fingering with right non-dominant hand." (A.R. 14.)

The ALJ found that plaintiff was able to perform her past relevant work as a "claims clerk, credit clerk, general clerk, and telephone solicitor" as generally performed. (A.R. 18.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since July 29, 2005, the alleged onset date. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.

1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff alleges the following issues: (1) whether the ALJ properly found her depression to be nonsevere; (2) whether the ALJ properly considered plaintiff's subjective complaints; (3) whether the ALJ properly considered the combination of her impairments in his RFC determination; and (4) whether the ALJ properly considered if she can perform her past relevant work. (Joint Stipulation ("Joint Stip.") at 5-8, 10-16, 18-20, 23-26, 28-29.)

### I. The ALJ Should Revisit His Step Two Determination Regarding Plaintiff's Depression On Remand.

Plaintiff contends that the ALJ's determination that her depression was not a severe impairment is not supported by substantial evidence. (Joint Stip. at 5-8.)

At step two of the sequential evaluation process, the ALJ is tasked with identifying a

claimant's "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[2] 20 C.F.R. §§ 404.1520(c), 416.920(c). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)(emphasis added). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686–87 (9th Cir.2005) (citation omitted; emphasis in original). When determining whether an impairment is severe, a claimant's age, education, and work experience will not be considered. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step two of the sequential evaluation process, the ALJ determined that plaintiff has the "severe impairments" of obesity, congestive heart failure, and back and knee pain. (A.R. 13.) The ALJ determined, however, that plaintiff's "mental impairment of depression does not cause more than minimal limitation in [plaintiff]'s ability to perform basic mental work activities and is therefore nonsevere." (*Id.*)

### A. Review of Plaintiff's Mental Records

A November 25, 2008 "Adult Initial Assessment" from the Long Beach Mental Health Center ("LBMHC") indicated that plaintiff's eye contact was normal, her speech was unimpaired, her interaction style was congruent and cooperative, she was oriented, her motor activity was calm, but her mood was dysphoric, her affect was constricted, her associations were loose and tangential, and her condition was "[n]ot [s]table." (A.R. 187.) It was noted, *inter alia*, that

---

[2] Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), 416.921(b).

5

plaintiff had a "depressed mood," "some sleep disturbances," a "raging appetite," and "memory problems." (A.R. 188.) Plaintiff was diagnosed with "major depression, recurrent, moderate" with a history of panic attacks, and she was assessed a Global Assessment of Functioning ("GAF") score of 60, indicating moderate symptoms.[3] (A.R. 188.) The psychiatrist recommended "groups, primarily." (*Id.*) Plaintiff went to group therapy sessions called either "Self Esteem Group - Assertive Training" or "Activity Clubhouse" in January, June, August, September, October, and November of 2009. (A.R. 547, 549, 551-53, 569-72, 574-75, 577, 579-81, 583, 586.)

On January 12, 2009, a progress note from LBMHC indicated that plaintiff was well groomed, her speech was soft, her thought process was unimpaired, her concentration was intact, her mood was euthymic, but her affect was worried. (A.R. 550.) Plaintiff's "major issues" were listed as follows:

> sad, discouraged, low self-esteem, worthless, lonely, isolated, loss of pleasure, tired, difficulty sleeping or sleeping too much, [and] decreased or increased appetite. [Beck Depression Inventory ("BDI")] Score 51 - Borderline Moderate/Severe depression. [Beck Anxiety Inventory ("BAI")] Score 36 - Severe Anxiety - Anxious, worried, nervous, fearful, apprehensive - sense of impending doom, feels tense, stressed, difficulty concentrating, restless, . . . tense, tight muscles, tired, [and] weak.

(*Id.*) Plaintiff was again assessed a GAF score of 60. (*Id.*)

---

[3] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000). A GAF of 51–60 shows moderate symptoms, such as those which would affect speech, or moderate difficulty in social, occupational, or school functioning. *Id.*

On October 11, 2009, consultative psychiatrist Neda Javaherian, M.D. performed a complete psychiatric evaluation of plaintiff.  (A.R. 14; 250-54.)  Plaintiff "denie[d] a[ny] past psychiatric hospitalizations, did see a psychiatrist once in the past and was put on BuSpar but her insurance ran out." (A.R. 251.) According to Dr. Javaherian, on mental examination:  plaintiff maintained good eye contact; she was able to establish rapport with the examiner; her psychomotor activity was within normal limits; her speech was fluent with normal prosody, rate, and rhythm; her affect was mildly restricted; and her thought processes were concrete, linear, and goal directed with no loosening of associations, flight of ideas, racing thoughts, thought blocking, thought insertions, thought withdrawal, or thought broadcasting.  (A.R. 252.) Plaintiff's concentration, abstract thinking, fund of knowledge, insight, and judgment were within normal limits.  (*Id.*)  Dr. Javaherian did note, however, that plaintiff "appears to have increased sleep, feelings of worthlessness and guilt, decreased energy and anhedonia."  (A.R. 253.)  Dr. Javaherian also noted that plaintiff "appeared mildly depressed throughout the interview." (*Id.*) Accordingly, Dr. Javaherian diagnosed plaintiff with "Major Depressive Disorder, Single Episode, Moderate" and found that plaintiff's prognosis was "fair."  (A.R. 254.)  Dr. Javaherian assessed plaintiff with a GAF score of 60 and opined that plaintiff would have a mild impairment in her ability to cope with work place stress.  (*Id.*)

State Agency reviewing physician Dr. L.O. Mallare reviewed plaintiff's medical records and completed a "Psychiatric Review Technique" form on November 24, 2009. (A.R. 266-78.)  Dr. Mallare noted that plaintiff suffered from affective disorder but opined that impairment was not severe.  (A.R. 266.)   In addition, Dr. Mallare concluded that:  plaintiff would experience no functional limitations in activities of daily living or in maintaining social functioning; would not suffer repeated episodes of decompensation of an extended duration; but would be mildly limited in maintaining concentration, persistence, and pace.  (A.R. 274.)

After the ALJ rendered his decision, plaintiff submitted a two-page letter from treating

7

physician John Kassabian, M.D.[4] and psychologist Peter Jay, PhD.  (A.R. 589-90.)[5]  The letter indicates they had treated plaintiff since July 17, 2008, for a "history of mental stress, hypertension, depression, anxiety, fatigue, and arthritis." (A.R. 589.)  The letter further indicates that plaintiff's anxiety and depression are "emotional factors that contribute to the severity of her symptoms and functional limitations" and concludes that plaintiff is "incapable of even low stress with regard to work stress." (*Id.*)  The letter states that the "symptoms and limitations described in the Multiple Impairment/Questionnaire that was completed on 8/29/2008[] [r]emain in effect" and that plaintiff "remains disabled from any full-time work."[6]  (*Id.*)

### B. The ALJ's Decision Regarding Plaintiff's Depression

The ALJ determined plaintiff's depression was not severe, because:  (1) plaintiff's depression was not considered sufficiently serious to require treatment with psychotropic medications; and (2) the medical evidence does not demonstrate that plaintiff's depression caused severe mental limitations.  (A.R. 14.)  The ALJ's reasons are unpersuasive.

---

[4] Although spelled as "Kassabiean" in the undated letter, his treatment notes reflect his name spelled as "Kassabian." (*See e.g.,* A.R. 474, 476, 478.)  Thus, the Court will refer to him as "Dr. Kassabian."

[5] The Appeals Council considered the letter, which it made part of the Administrative Record, but determined that the evidence "d[id] not provide a basis for changing the [ALJ]'s decision" (A.R. 1-2.)  Notwithstanding the Appeals Council's determination, this Court must consider such evidence in determining whether the ALJ's decision is supported by substantial evidence and free from legal error. *See* Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012)(holding that "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

[6] The letter further noted that laboratory findings and testing results have shown "hernia, abnormal ankle brachial, disc disease (in low back), major depression, hypertension, gerd, sleep apnea, and hyper ventilating." (A.R. 589.)  Dr. Kassabian and Dr. Jay opined that plaintiff "cannot sit nor stand or work long enough in an 8-hour workday to sustain any full time work." (*Id.*)  Plaintiff should take "breaks in between walking and standing times, sit for 15 minutes as needed for flexing of the joints," and is "markedly limited in using her hand and fingers for fine manipulations and using arms for reaching (including overhead)." (*Id.*)  Plaintiff is also precluded from pushing, pulling, kneeling, bending, or stooping. (*Id.*)

The ALJ's first reason for finding plaintiff's depression to be "nonsevere" conflicts with the evidence of record. Although plaintiff testified at the administrative hearing that she did not use psychotropic medication "right now," she expressly acknowledged her use of such medication in the past. (A.R. 33.) Indeed, the medical record supports plaintiff's assertion that she had been prescribed various medications -- *i.e.,* BuSpar, Ativan, and Valium -- to treat her depression and anxiety. (*See, e.g.,* 251 (BuSpar), 566 (Ativan, Buspar, and prior use of Valium).) However, and significantly, plaintiff stopped taking her medication, because her insurance ran out. (A.R. 251 - noting that plaintiff was "put on" BuSpar but her insurance ran out.) As such, the ALJ's reasoning on this point is ill-founded.

Next, to the extent the ALJ found plaintiff's depression to be "nonsevere" because plaintiff was not assessed with "severe limitations," the ALJ's reasoning is unconvincing. As an initial matter, plaintiff has the burden of showing only that her impairment more than minimally limits her ability to perform basic work activities -- a *de minimis* standard. As noted *supra*, Dr. Javaherian diagnosed plaintiff with "major depressive disorder, single episode, moderate," assessed plaintiff with a GAF score of 60, opined that plaintiff was mildly impaired in her ability to cope with work place stress, and found plaintiff's prognosis to be "fair." However, in conducting her examination of plaintiff, Dr. Javaherian explicitly noted that "[t]here [we]re no mental health records in [plaintiff's] chart" for her to review." (A.R. 250.) Dr. Javaherian, therefore, based her assessment on an incomplete picture of plaintiff's condition. The regulations require that a consultative examiner be given all necessary background information about the plaintiff's condition. 20 C.F.R. §§ 404.1517, 416.917. Background information is essential, because consultative exams are utilized "to try to resolve a conflict or ambiguity if one exists." 20 C.F.R. §§ 404.1519a(b), 416.919a(b). Consequently, because Dr. Javaherian assessed plaintiff's impairment(s) and limitation(s) without a complete review of plaintiff's medical records, the Court cannot conclude that Dr. Javaherian's opinion constitutes substantial evidence that supports the ALJ's reasoning on this point.

Further, while Dr. Mallare reviewed the then-available medical record of evidence, it appears that he relied, perhaps significantly, on the opinion of Dr. Javaherian and the fact that plaintiff was not taking psychotropic medication in finding plaintiff's impairment to be nonsevere. (A.R. 276 - "Consultants Notes" cite no current prescription and mention Dr. Javaherian's finding that plaintiff was "mildly depressed" with grossly intact cognition.) As noted *supra*, Dr. Javaherian's opinion was not based upon a proper review of the medical evidence, and it appears that plaintiff was prescribed psychotropic medications, but could not afford them due to a lack of insurance. Thus, the ALJ's decision to afford significant weight to Dr. Mallare's opinion also may constitute error.

Moreover, there is significant medical evidence of record indicating that plaintiff's depression meets the more than *de minimis* severity standard at step two of the sequential evaluation process. As noted *supra*, in the LBMHC Adult Initial Assessment, plaintiff was diagnosed with moderate major depressive disorder with a history of panic attacks. (A.R. 188.) In his decision, the ALJ gave short shrift to the LBMHC Adult Initial Assessment. The ALJ stated that the assessment "shows a depressed mood with panic attacks" and a "generally normal" mental evaluation, "except that [plaintiff] exhibited a dysphoric mood, constricted affect, and loose tangential associations." (A.R. 14.) Notably, however, the ALJ never mentioned the fact that plaintiff's condition was found to be "not stable" or that she was found to have "memory problems," "sleeping disturbances," and a GAF score of 60. (A.R. 187-88.) Further, the ALJ never gave *any* reason, let alone an appropriate reason, for rejecting these findings.

In addition, as noted *supra,* a January 12, 2009 progress note from LBMHC indicates that plaintiff has moderate to severe mental impairments. (A.R. 550.) For example, plaintiff was reported as having: a BDI score of 51, indicating moderate/severe depression; a BAI score of 36, indicating severe anxiety; and a GAF score of 60, indicating moderate symptoms. (*Id.*) None of

10

1 these test results were discussed by the ALJ.[7]

3 Finally, the letter submitted to the Appeals Counsel from Dr. Kassabian and Dr. Jay, who have treated plaintiff since July 17, 2008, for, *inter alia*, depression and anxiety, notes that: plaintiff's anxiety and depression are "emotional factors that contribute to the severity of her symptoms and functional limitations"; plaintiff is "incapable of even low stress with regard to work stress"; and plaintiff "remains disabled from any full-time work."[8]  (A.R. 589-90.)

Accordingly, based on the aforementioned evidence, the ALJ must revisit his severity determination with respect to plaintiff's depression.[9]

## II. The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered.  Moisa v. Barnhart,

---

[7] Although the ALJ did not acknowledge the above-noted GAF score of 60, the ALJ did acknowledge that Dr. Javaherian assessed plaintiff with a GAF score of 60 on October 11, 2009. (A.R. 14.)  The ALJ noted that a GAF score of 60 indicates "'moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupation, or school functioning (e.[g]. few friends, conflicts with peers or co-workers)[)]." (*Id.*) The ALJ appeared to give the score little weight, noting that "60 is very close to mild symptoms" and "such [a] score is only a snapshot in time, which does not portray [plaintiff]'s condition for a continuous 12-month period." (A.R. 14.)  While the ALJ was quick to dismiss Dr. Javaherian's GAF score as a one-time snapshot of plaintiff's condition, plaintiff has repeatedly been assessed with a GAF score of 60 for a period of at least 12 months. (*See, e.g.,* A.R. 188 (11/25/08 - GAF Score of 60); A.R. 550 (11/12/09 - same); A.R. 254 (10/11/09 - same).)

[8] The letter also states that "symptoms and limitations described in the Multiple Impairment/Questionnaire that was completed on 08/29/2008. . . . [r]emain in effect." (A.R. 590.)  The cited 2008 Questionnaire does not appear to be in the record, and therefore, further development of the record may be appropriate.

[9] In addition, the ALJ should specifically consider whether plaintiff's edema constitutes a severe impairment.

11

367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1629(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas, 278 F.3d at 958-59; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ concluded that "[a]fter careful consideration of the evidence, . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 15.) Significantly, the ALJ cited no evidence of malingering by plaintiff. Nonetheless, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (A.R. 15-16.) Accordingly, the ALJ's reasons for finding that plaintiff was not credible with respect to his subjective symptom and pain testimony must be "clear and convincing."

The ALJ rejected plaintiff's testimony regarding the severity of her pain symptoms, because: (1) plaintiff's subjective complaints and alleged limitations are out of proportion to the objective medical evidence; (2) plaintiff's treatment has been essentially routine and/or conservative in nature; and (3) there is no evidence of muscle atrophy that would be compatible with plaintiff's inactivity and inability to function. (A.R. 15.)

During the hearing, plaintiff testified that she is unable to work because of her severe depression. (A.R. 31.) She also is unable to sit for long periods of time (*id.*) and must elevate her legs for several hours a day due to the edema in her legs (A.R. 34-35). Plaintiff testified that, due to surgery to remove a brain tumor, she has mentally slowed down. (A.R. 31-32.) She also has a missing disc in her lower back and a slipped disc in her upper back, which make it hard for her to sit or stand for long periods of time. (A.R. 32.) Plaintiff testified further that she has pain and osteoarthritis in her knees (A.R. 32) and carpal tunnel syndrome (A.R. 33).

With respect to the ALJ's first ground, even assuming *arguendo* that the objective medical evidence did not corroborate the degree of plaintiff's allegedly disabling symptoms, this factor cannot form the "sole basis" for discounting plaintiff's subjective symptom testimony. Burch, 400 F.3d at 681; *see* Bunnell, 947 F.2d at 34 (noting that "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination rises or falls with the ALJ's other grounds for discrediting plaintiff.

The ALJ's second ground for discounting plaintiff's credibility -- *to wit*, that plaintiff's testimony is inconsistent with her routine and conservative treatment -- is not clear and convincing. (A.R. 15-16.) In his decision, the ALJ specifically noted that plaintiff "admitted that she does not take medication for her depression." (A.R. 15.) While it is true that conservative or infrequent treatment can be used by an ALJ to refute allegations of disabling pain, it "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1162 (9th Cir. 2008). As discussed above, it appears that plaintiff was prescribed medication to treat her depression, but her insurance ran out. Given the fact that plaintiff may have lacked insurance to

13

pursue more aggressive treatment for her depression, and perhaps for her other alleged impairments, the ALJ's reasoning does not constitute a clear and convincing reason for discrediting plaintiff.

The ALJ's final reason for discounting plaintiff's credibility -- *to wit*, that there is "no evidence of severe disuse muscle atrophy that would be compatible with her alleged inactivity and inability to function" -- is also not clear and convincing. (AR 15.) The ALJ cites no medical opinion or medical literature to the effect that someone with plaintiff's alleged degree of impairment necessarily would have severe disuse muscle atrophy. Further, plaintiff's testimony was that she is unable to stand or sit for long periods of time, not that she is completely incapacitated. (A.R. 45-46.) Thus, without more, a lack of muscle atrophy does not rise to the level of a clear and convincing reason for discounting plaintiff's credibility.

Accordingly, for the aforementioned reasons, the ALJ failed to provide clear and convincing reasons, as required, for finding plaintiff to be not credible.

### III. On Remand, The ALJ Must Review And Reconsider Plaintiff's Remaining Claims.

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ's conclusion regarding plaintiff's RFC and her ability to do her past relevant work may change. Therefore, the Court does not reach plaintiff's remaining claims. To properly review and consider these claims, the ALJ must correct the above-mentioned errors. Further, to the extent that plaintiff's RFC is reassessed, additional testimony from a vocational expert likely will be required to determine what work, if any, plaintiff can perform.

**IV.     Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. Careful consideration must be given to properly address and correct the above-mentioned deficiencies and errors, particularly in view of plaintiff's nearly advanced age at the time the ALJ issued his decision[10] and her litany of severe and non-severe impairments (including, *inter alia,* obesity (A.R. 377, 473), congestive heart failure (A.R. 13), back and knee pain (A.R. 247, 249, 256, 262-63, 258, 499), depression/anxiety (A.R. 188, 253-54, 276-78, 377, 550, 584-85), edema (A.R. 198, 307), post right temporal lobotomy (A.R. 235, 564), right temporal encephalomalacia (A.R. 330), diastolic dysfunction of the heart (A.R. 305, 352), cardiomegaly (enlarged heart) (A.R. 499), heart palpitations (A.R. 256, 305), chest pain (*id.*), hypertension (*id.*), recurrent shortness of breath (A.R. 256), post acute transient ischemic attack (A.R. 330), sleep apnea and somnolence (A.R. 256, 377), carpal tunnel syndrome (223-24), GERD (A.R. 198, 377), bursitis (A.R. 237), kidney problems (A.R. 247), dysuria (A.R. 236, 240), and a hernia (A.R. 247)). The Court notes, for example, that although the ALJ mentioned plaintiff's edema, he never specifically determined whether it constitutes a severe or nonsevere impairment,

---

[10]     Plaintiff was 10 days shy of "advanced age" at the time the ALJ issued his decision.

and he did not sufficiently address, or give appropriate reasons for rejecting, her alleged postural limitations, including her asserted need to elevate her legs for several hours a day. Accordingly, on remand, the ALJ must: revisit his severity determinations; give appropriate reasons, if they exist, for rejecting plaintiff's subjective symptom testimony; and properly consider plaintiff's severe and nonsevere impairments in assessing her RFC and determining what work, if any, she can perform. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2) (ALJ must consider both severe and nonsevere impairments in making the RFC assessment).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: November 26, 2013

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE